DOMINGO OLAZAGASTI, Plaintiff and Appellee, *v.* EASTERN SUGAR ASSOCIATES (A TRUST) and MANUEL A. DEL VALLE, Defendants and Appellants.

No. 11574. Argued November 8, 1955. Decided April 2, 1956.

*Fiddler, González & Nido* and *Carlos J. Faure* for appellants.
*Vicente Géigel Polanco* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Domingo Olazagasti filed in the San Juan Part of the Superior Court of Puerto Rico a claim for wages against the Eastern Sugar Associates (a trust). The complaint was granted and the defendant was ordered to pay to the former the sum of $11,562.54 for wages due, plus the costs and expenses and $1,500 for fees for plaintiff's attorney.

The following abstract is taken from the elaborate opinion rendered by the lower court in support of its judgment:

Plaintiff worked as a mechanic in Central Pasto Viejo's mill, owned by the defendant, from December 4, 1948 to August 18, 1954, which is the period involved in the complaint, by virtue of a contract in the form of a letter which the former signed at defendant's request. The Central Pasto Viejo is engaged in the manufacture of sugar, which is an article of interstate commerce, the defendant being thereby covered by the provisions of the Federal Fair Labor Standards Act.[1] The contract in question is similar in form to the "Belo" type contracts.[2]   By that contract the defendant bound itself originally to pay to plaintiff a basic rate of compensation of $0.75 per hour during the grinding season and $0.923 during the "dead season"; it guaranteed a weekly salary of $48 provided he worked no less than 56 hours a week during the grinding season and 48 hours during the dead season; and it further agreed that "time worked in excess of 8 hours a day or on the rest day provided by law" would be compensated "at double the applicable basic wage rate," and that "time worked in excess of 40 hours a week during the dead season" would be compensated "at the rate of one and one half the applicable basic wage rate." [3]

---

[1] See 29 U.S.C.A. § 201 *et seq.*

[2] See *Walling* v. *Belo Corporation*, 316 U. S. 624–640, 86 L. Ed. 1716; and *Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288.

[3] The contract in the form of a letter reads verbatim as follows:

December 4, 1948.

To: Mr. Domingo Olazagasti
Central Pasto Viejo
My dear Mr. Olazagasti:

It is understood and agreed that the statements, agreements, and commitments herein made and undertaken by Eastern Sugar Associates are made and undertaken by the trustees known as Eastern Sugar Associates (a trust) in their capacity as such trustees under the terms of the declaration of trust entered into at Baltimore, Maryland, on January 16, 1934, and not in their personal capacity, and no trustee, beneficiary, officer or agent of Eastern Sugar Associates shall be held to be personally liable by reason thereof. [The foregoing appears originally in English.]

From and after this date your occupation will be Chief Mechanic, and you will report and be directly responsible to Mr. J. Rodríguez Guz-

The contract between the parties was in force during the full period involved in this litigation, and the hourly wage rate for the grinding season was always lower than that for the dead season. Notwithstanding the terms of that contract, "the defendants did not pay to plaintiff the amount which should have corresponded to him under the terms thereof and under the legislation in force with respect to the hours worked in excess of 8 hours a day and 40 hours a week." Plaintiff's work hours did not fluctuate from week to week as respects the basic period of 40 hours a week. His working hours were rather regular. He worked a daily

mán, and will perform those services which from time to time he may assign to you.

The basic rate of compensation per hour will be $0.75 during the grinding season and $0.923 during the dead season.

Please be advised that if your services are engaged you will be required to work no less than 56 hours a week during the grinding season and no less than 48 hours a week during the dead season. Time worked in excess of 40 hours a week during the dead season will be compensated at the rate of one and a half the applicable basic wage rate. Furthermore, time worked in excess of 8 hours a day or on the rest day provided by law will be compensated at double the applicable basic wage rate.

In view of the foregoing, we are willing to give you the number of weekly work hours mentioned above during the grinding season and during the dead season respectively, so that your weekly compensation during any week worked by you will never be less than $48.

This contract shall be considered to be in force until the conditions herein stipulated are changed or the same is cancelled by the employer. Any other personal labor contract in force between you and this organization is hereby terminated, in which case your employment with us shall hereafter be governed exclusively by the terms of this contract.

Kindly signify your conformity by signing below.

Eastern Sugar Associates<br>(A trust)<br>By: (Sgd.) J. Rodríguez Guzmán

ACCEPTED: This 5th day of December 1948.

(Signed) Domingo Olazagasti.

(Signature)

On October 6, 1949, the defendant wrote a letter to plaintiff informing him that, from and after that date and in view of the wage increase, his basic wage rate would be $0.78125 per hour during the grinding season and $0.9615 during the dead season, and his total compensation in any week would be no less than $50 on the basis of the workweek stipulated in the contract. On January 17, 1952, the defendant again wrote to

shift of 8 hours, and the defendant could require his services during extra hours if it suited its interests. Plaintiff's work hours were fixed and specific. Plaintiff's contention is that he is entitled to receive compensation for the hours worked in excess of 8 hours a day, both during the grinding and the dead season, and for the hours worked on the weekly day of rest, at double the basic rate which would be computed by dividing the weekly wage by 40, and that the hours worked in excess of 40 hours a week, both during the grinding and the dead season, should be compensated at the rate

plaintiff informing him that from and after that date the basic wage rate would be $0.859375 during the grinding season and $1.0576 during the dead season; that the time worked by him in excess of 40 hours a week during the dead season would be compensated at the rate of one and a half the applicable basic wage rate, and that according to Act No. 379 of 1948 time worked by plaintiff in excess of 8 hours a day or on the rest day prescribed by law would be compensated at double the applicable basic wage rate. On March 2, 1953, the defendant once more wrote to plaintiff informing him that, in view of the fact that the new federal minimum wage of 75 cents per hour in the manufacturing phase of the sugar industry would become effective on that date, and realizing that the application of such minimum wage would require a fair and reasonable revision of one sector of the general wage structure, the defendant was pleased to inform plaintiff that from and after the workweek commencing on February 26, 1953, the terms and conditions of plaintiff's employment with the defendant would be the following:

A—Plaintiff was to perform the work from time to time assigned to him by his superiors;

B—His regular compensation rate per hour would be $1.20;

C—His workweek would be 48 hours during the grinding season and 45-⅓ hours during the dead season;

D—All hours worked by plaintiff in excess of 40 hours a week during the dead season would be compensated at the rate of one and a half the regular rate fixed above;

E—Other extra hours worked by plaintiff at defendant's request would be compensated at the rate of the extra compensation fixed in the laws or decrees applicable thereto, the amount of which would be computed on the basis of the regular hourly wage stipulated above.

In the letters of October 6, 1949 and January 17, 1952, it was stated that the same would not affect in any manner whatever the other conditions stipulated in the contract of services under which plaintiff had been working prior thereto, and that the increases in the basic rates would not be effective until the dates of those letters. In the letter of March 2, 1953, it was further stated that such notice rendered ineffective any existing contract between plaintiff and defendant.

of one and a half the same basic rate. He also maintains that his claim rests, in its substantive part, on laws and legal provisions of Puerto Rico.[4]

The defendant appealed from the judgment rendered against it. The errors assigned on appeal are addressed exclusively to the conclusions of law made by the lower court. These errors will be discussed in the order of assignment.

■ The defendant first maintains that "the lower court erred in holding that the Belo type contract or contracts between appellee and appellants [5] were null and void." In the course of the opinion the lower court stated that:

"The defendants allege that the contracts are valid under the doctrine in the case of *Walling* v. *Belo Corporation,* 316 U.S. 624. Let us see whether they are correct. The facts of the claim under consideration are substantially identical to those in *Peña* v. *Eastern Sugar Associates,* 75 P.R.R. 288 . . . In the *Peña* case the defendants raised the same issue of the existence and validity of the Belo type contract. Their allegation did not prosper. The Supreme Court held that the contract was null and void for failure to meet the essential requirements of the Belo type; that the hourly rates for the grinding season and the dead season were fictitious and arbitrary; that the so-called weekly guaranty constitutes the real wage, etc. . . .

"The decision . . . of the Supreme Court in the *Peña* case is squarely applicable to the case at bar by reason of the substantially identical circumstances in either action."

---

[4] Plaintiff alleges in his brief that, as to the procedural aspect, he has followed the special procedure provided in cases of claims for wages by Act No. 10 of 1917 (Spec. Sess. Laws II, p. 216), as amended; and, as to the substantive part, the Minimum Wage Act of Puerto Rico (No. 8 of April 5, 1941, Sess. Laws, p. 302), as amended; Mandatory Decree No. 3 promulgated on February 27, 1943 by the Minimum Wage Board of Puerto Rico for the sugar industry; Act No. 289 of 1946 (Sess. Laws, p. 682), fixing one day of rest a week; Act No. 379 of May 15, 1948 (Sess Laws, p. 1254); and § 1867 of the Civil Code, 1930 ed., which fixes the limitation period for claims for wages.

[5] In the title of the complaint the Eastern Sugar Associates (a trust) and Manuel A. del Valle, its president, appeared as defendants. However, in the body of the complaint reference is made only to the Eastern Sugar Associates as defendant.

The trial court next proceeded to apply to the facts of the present case the doctrine of the *Peña* case *supra*, and to draw, by virtue of such application, all the proper juridical consequences.

Besides arguing that the facts herein involved are different from those of the *Peña* case *supra*, appellant urges that we reject the doctrine therein established as to Belo type contracts. *Walling* v. *Belo Corporation*, 316 U. S. 624–640, 86 L. Ed. 1716. Its argument is that the limitations on this type of contract, as established in that opinion, were not a part of the original doctrine in the *Belo* case *supra*. As a consequence thereof, it alleges that "the lower court, following the *Peña* doctrine, misinterpreted Belo . . ." and cites many cases decided under the Belo doctrine *supra*, which did not bear, in its judgment, the limitations adopted by our Court in the *Peña* case.[6]

The doctrine announced by this Court in *Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288, regarding the *Belo* type contracts may be summarized as follows:

This contract is one which, if valid, enables the employer to pay a uniform weekly wage which includes overtime pay for workweeks of variable lengths. To be valid, it must comply with the following requirements: the regular rate per hour stipulated in the contract must be equal to or greater than that fixed by the law. It must provide for the payment of time and a half for hours worked in excess of 40 hours a week. It must fix a guaranteed weekly wage. If the hourly rate stipulated in the contract is such that it does not reasonably determine the weekly wages which it proposes to pay for regular as well as for extra hours currently worked, such hourly rate would be fictitious and void. The nature of the employee's work must require irregular

---

[6] By subsequent amendments made by the Congress, some of those limitations have become a part of the Fair Labor Standards Act prevailing in the federal jurisdiction. See the Fair Labor Standards Act, § 207, as amended on July 20 and October 26, 1949. 29 U.S.C.A. § 207.

work hours, and the number of hours actually worked by the employee must fluctuate from week to week. The contract must be legal in all respects. The extra compensation provided therein must be actually paid and this must be done promptly. The validity of the contract will be judged by the employee's work record and not merely by the bare terms of the contract.

In the present case the contract subscribed by plaintiff and the work which, as a matter of fact, he performed thereunder did not fully comply with the foregoing requirements, especially the requirement that his work should require irregular hours. On the other hand, the defendant has not shown at all that the principles laid down by us to declare the nullity of the Belo type contract in the *Peña* case were erroneous or mistaken. See *Eastern Sugar Associates* v. *Peña*, 222 F. 2d 934; certiorari denied by the Supreme Court of the United States, 350 U. S. 900. *Cf. Mitchell* v. *Brandtjen & Kluge, Inc.*, 228 F. 2d 291 (C. A. 1, 1955). The lower court did not therefore err in concluding that the contract herein involved between plaintiff and defendant was null and void.

■ The defendant next maintains that "the lower court erred in holding that Act No. 379 of 1948, validly establishes a maximum regular work week of 40 hours for the sugar industry in Puerto Rico during the whole year, and, hence, that the appellee, who was a factory employee performing duties directly related to the processing of sugar, worked on the basis of a regular 40-hour week."

In this connection, the trial court stated as follows:

". . . that this industry [sugar industry, in its industrial phase] has been covered during the entire course of plaintiff's employment by Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico, which has been in effect since April 29, 1943. This Decree establishes the employer's obligation to pay at double rate all hours worked in excess of 8 hours a day, and

time and a half for the hours worked in excess of 40 hours a week during the dead season . . .[7]

". . . that industry is also subject, pursuant to § 5 of Act No. 379 of 1948 . . . to the 40-hour week limitation during both the grinding and the dead season and to the payment of time and a half for the hours worked in excess of 40 hours a week. It is to be noted that in this particular the limitation of the Puerto Rican law as respects the maximum of 40 hours a week and the payment of time and a half for the hours in excess of 40, corresponds to the limitation to that effect prescribed by the Fair Labor Standards Act . . .

". . . in the light of Decree No. 3 and of the provisions of § 5 of Act No. 379 of 1948, the sugar industry of Puerto Rico, in its industrial phase, is subject to two limitations: to the 40-hour week during both the grinding and the dead season and the legal 8-hour day also during the grinding and the dead season."

In *Peña* v. *Eastern Sugar Associates, supra,* this Court decided the question raised here, except as to the provisions relative to certain employees during the grinding season and certain other possible exceptions, stating at p. 304 as follows:

". . . With possible exceptions not relevant here, § 5 [of Act No. 379 of 1948] adopts the Federal standard of a 40 hour workweek for industries subject to the Federal Act.[8] Con-

---

[7] See § B-2(*b*) of Mandatory Decree No. 3. This section provides that:

"No employer shall employ a worker in the industrial phase of the Sugar Industry during the so-called 'dead season,' for more than forty (40) hours in any workweek, unless such worker receives compensation for the hours worked in excess of the said forty (40) hours at a rate one and one-half times the minimum rate applicable in accordance with the scale established in Section B-1 of this decree."

[8] Section 5 of Act No. 379 of May 15, 1948 (pp. 1254–1258) reads as follows:

"Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours; *Provided,* however, That every employer in any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in excess

sequently, as a general proposition, § 5 and the Federal Act, when read together, operate to make 40 hours the regular work-week for the industrial phase of the sugar business during the grinding season." [9]

It would be idle to reproduce here at length the reasoning relied on by this Court to reach that conclusion in the *Peña* case, *supra*. As in that case, appellant has not convinced us that this Court erred in expressing itself the way it did in that case.

■ The third assignment of error made by the defendant is to the effect that "the lower court erred in holding that Act No. 379 of 1948 validly establishes a regular 40-hour week for persons engaged in activities covered by the Federal Fair Labor Standards Act, inasmuch as this Act, as thus interpreted, discriminates between employers and/or activities covered by the Federal Act and those which are not."

The defendant submits this error for consideration on the grounds set forth by it in the discussion of the second and fifth (*sic*) errors. In addition to the reasons adduced by us in the discussion of the second error to affirm the holding of the trial court, it will not be amiss to note that, although Act No. 379 of 1948, in establishing the regular 40-hour week for persons employed in activities covered by

---

of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed. To determine the wage rate agreed upon for regular hours of work, the daily, weekly, or monthly wages, or wages otherwise stipulated, shall be divided by the number of regular hours worked during that same period in accordance with the provisions of this Act." (29 L.P.R.A. § 274.)

[9] In *Peña* v. *Eastern Sugar Associates, supra*, p. 304, footnote 10, we left open the question of whether the *Provided* clause in § 5 of Act No. 379 required overtime pay during the grinding season for an employee like the plaintiff, despite the fact that an exemption from overtime pay for such an employee is provided in § 7(c) of the Federal Fair Labor Standards Act. We decide this question in our subsequent discussion of the fourth error.

the Fair Labor Standards Act, adopts the regular 40-hour week, as a matter of fact, it adopts a more beneficial rule for the employee in computing the overtime pay. *Peña v. Eastern Sugar Associates, supra*, pp. 300, 303; *Eastern Sugar Associates* v. *Peña*, 222 F.2d 934, 938.

▆▆ The fourth assignment is to the effect that "the lower court erred in holding that the processing exemption granted by the Federal Fair Labor Standards Act (29 U.S.C.A. 207(c)) was validly set aside by Act No. 379 of 1948 and by Act No. 289 of April 9, 1946."

Section 207 of the Federal Fair Labor Standards Act in its pertinent part reads thus:

"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

" .     .     .     .     .     .     .     .

"(c) In the case of an employer engaged in the first processing of milk, buttermilk, they, skimmed milk, or cream into dairy products . . . or in the processing of sugar beets, sugar-beet molasses, sugarcane . . . into sugar (but not refined sugar) or into sirup, the provisions of subsection (a) of this title shall not apply to his employees in any place of employment where he is so engaged . . ."

Section 5 of Act No. 379 of 1948 (pp. 1254, 1258) provides that:

"Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours: *Provided, however,* That every employer in any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in

excess of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed. To determine the wage rate agreed upon for regular hours of work, the daily, weekly, or monthly wages, or wages otherwise stipulated, shall be divided by the number of regular hours worked during that same period in accordance with the provisions of this Act."

And Act No. 289 of 1946 (p. 682) provides essentially:

"Section 1.—All employees of any commercial or industrial establishment, enterprise, or lucrative business not subject to the provisions of Section 553 of the Penal Code of Puerto Rico, as subsequently amended, relative to the closing to the public, shall be entitled to one day of rest for every six (6) working days.

"For the purposes of this Act, one day of rest shall be understood as a period of twenty-four (24) consecutive hours.

" .        .        .        .        .        .

"Section 4.—Any employer who employs or permits an employee to work on the day of rest established by this Act, shall be obliged to pay said employee for the hours worked during such day of rest a rate double the salary rate agreed upon for regular working hours."

In *Peña* v. *Eastern Sugar Associates, supra,* this Court stated as follows in footnote 10:

"Under § 7(c) of the Federal Act, employers in the industrial phase of the sugar business are not required to pay overtime for hours worked in excess of 40 hours by *certain* employees during the grinding season . . . But no contention is made here that the work of the plaintiff during the grinding season was covered by the exemption from overtime contained in § 7(c) of the Federal Act. Apparently he is an employee who must be paid overtime after 40 hours during the grinding season under the Federal Act. *We therefore leave for another day what effect, if any, the Provided clause of § 5 of Act No. 379 had on the exemption embodied in § 7(c) of the Federal Act.*" (Italics ours.)

The plaintiff laborer in this case is a mechanic whose duties consisted in repairing and maintaining in working condition the mill of defendant's sugar factory. On this point there is no controversy. As such, he is within the exemption established by § 7 (c) of the Fair Labor Standards Act. 29 U.S.C.A. § 207 (c). *Maneja et al.* v. *Waialua Agricultural Co.*, 349 U. S. 254. Therefore, the question which we left open in footnote 10 of the *Peña* case must be decided here. In this connection, the trial court stated as follows:

"It is evident that, under the provisions of § 18 of the Fair Labor Standards Act, this exemption, as respects the maximum hours during the grinding season, does not bar, limit, or impair in any manner whatever the application of the local Act—more beneficial to the employee—in establishing a specific limit to the workweek in this industry and providing for the payment of extra compensation for the hours worked in excess of the weekly limitation. We have already decided that § 5 of Act No. 379 of 1948 fixes a maximum limit of 40 hours a week in the Puerto Rican industries covered by the Federal Act *supra*, and provides for the payment of time and a half the regular rate for the hours worked in excess of 40 hours a week. This limitation of the working time and the additional pay are applicable to both the grinding and the dead season. It is well to repeat that the claims in the above-entitled case are based on laws and legal provisions of Puerto Rico. An exemption granted by the Federal Act in the matter of hours and/or wages does not excuse compliance with the provisions of the local laws bearing on hours and wages. If the local provisions are more beneficial to the employees, as in effect they are as respects hours in the instant case, they govern over the provisions of the Federal statute."

As may be clearly seen from the foregoing, the trial court did not hold expressly that the exemption granted by the Federal Act was rendered ineffective by Act No. 379 *supra*. What the court did hold was that both legal provisions co-exist in different fields of action, and that this is possible

by virtue of another provision of the Federal Act *supra*, which reads thus:

"No provision of sections 201–219 of this title or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under such sections . . . No provision of sections 201–219 of this title shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under sections 201–219 of this title, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under such sections." 29 U.S.C.A. § 218.

We may say, without fear of being mistaken, that in enacting that provision the United States Congress made evident its intention to prevent that, on the authority of the Federal Fair Labor Standards Act, the working standards of higher level prevailing throughout the states or territories of the Union be reduced. In the case at bar, the standard established by the Federal Congress consisted in exempting plaintiff from the advantages of the federal statute. This does not mean, however, that he was necessarily deprived of legal protection. In *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, the facts were different from those of the present case, but the principle there announced is applicable here. In that case we stated at p. 270:

". . . Congress did not preempt the field of standards relating to wages and hours of employees working in interstate commerce. It could have barred local legislation on any phase of the subject-matter. See *Latoni* v. *Municipal Court*, 67 P.R.R. 130. But instead of prohibiting local statutes, Congress affirmatively provided, perhaps out of an abundance of caution, in § 18 of the Fair Labor Standards Act that States could provide a higher minimum wage or a shorter maximum work-week than that established by the Act."

The question remains, however, whether our Legislature, in adopting § 5 of Act No. 379, did in fact provide for over-

time pay at the rate of time and a half after 40 hours during·
the grinding season for employees who, like plaintiff, would·
otherwise be exempt during the grinding season from the·
overtime provisions of the Federal Act by virtue of § 7 (c)
of the latter.

As we pointed out in footnote 10, p. 304 of the *Peña*
case, one way to agree with the defendant is for us in effect·
to read into the *Provided* clause of § 5 the phrase, "where
overtime pay is required by Federal law." This would, of·
course, mean that we were not following the literal language·
of the statute. But if we are satisfied that the Legislature·
did not intend its language to be read literally, it is our·
duty, wherever the language lends itself fairly to such an·
interpretation, to read it in accordance with the intention·
of the Legislature. *Borinquen Furniture* v. *District Court*,·
78 P.R.R. 858; *Colonos de Caña de Santa Juana, Inc.* v.·
*Sugar Board*, 77 P.R.R. 371.

The *Provided* clause of § 5 of Act No. 379 shows on its·
face that the Legislature was endeavoring to write the Fed-·
eral formula for overtime pay, which was based on a work-·
week, into the local law, insofar as the latter applied to·
industries subject to the Fair Labor Standards Act. This
view is fortified by the provision that *only* time and a half·
must be paid, whereas local industries under other sections·
of the Act must pay double time after 8 hours a day. The
use of the word "only" makes it seem unlikely that the Leg-·
islature intended to expand the employer's liability beyond
that provided in the Federal Act; yet that would be the
effect of reading the *Provided* clause as excluding the sea-
sonal exemption provided in § 7 (c) of the Federal Act. In
addition, the legislative history of Act No. 379 shows that
the *Provided* clause was inserted "to adjust" the local statute·
to the Federal law. We do not have before us the entire
legislative history. However, in a certificate which is filed

of record it appears that after the President of the Senate announced that S. B. 25 (which thereafter became Act No. 379 of 1948) had been unanimously approved on a third reading and directed that it be referred to the House of Representatives, Senator Pagán, explaining the affirmative vote which he had just cast, stated as follows:

"I shall vote for the law with the amendment proposed by Mr. Géigel Polanco, but I do not agree with the statement that the law be amended to conform it to the Federal Act.

"The legislative power of our Legislature to establish the original rate provided in the Bill is an incontrovertible fact. As established by the Legislature, it is not incompatible in any way with the Federal Act. Neither is it a myth that we have full power and authority to do so.

"Another reason, of a juridical character, is that the Bill, as thus drafted, may render void the whole legislative piece, which undoubtedly ceases to be uniform and establishes privileges in favor of some employers and against others, thereby jeopardizing the remainder of the law.

"Mr. Géigel Polanco reports that the statements made by him at the time of considering the above-transcribed amendment will be submitted in writing to the Secretary, to be filed of record."

The Secretary of the Senate further certifies:

". . . that according to the records of the Senate of Puerto Rico, the statements made by Mr. Géigel Polanco during the consideration on third reading of S. B. 25 and which he announced he would submit in writing to the Office of the Secretary to be filed of record, do not appear as having been delivered to the Office of the Secretary, and they therefore do not appear either in the minutes or in the records of this Senate."

In this context, "to conform" could mean only that the *Provided* clause of § 5 of Act No. 379 was providing substantially the same overtime pay for a workweek as the Federal Act, including exemption therefrom during the grinding season as provided in § 7 (c).

This intention of the Legislature was not fully accomplished. The terms of § 7 and the last sentence of § 5 of our law require the use of 40 hours as the regular workweek —rather than the hours actually worked as provided in the Federal law—in calculating the overtime pay of an employee under a frustrated Belo contract. This results in giving such an employee more overtime pay under Act No. 379 than he would receive under the Federal Act. *Peña* v. *Eastern Sugar Associates, supra.* It must be admitted that the provision in Act No. 379 of a more beneficial method of calculating overtime pay for a frustrated Belo contract than is found in the Fair Labor Standards Act weakens the argument that the Legislature intended in the *Provided* clause of § 5 to restate not only the Federal formula for time and a half after 40 hours a week but also the Federal seasonal exemption from such overtime pay embodied in § 7(c) of the Federal Act. Nevertheless, we think a strong argument can still be made—from (1) the language of the *Provided* clause, (2) the use of the word "only," and (3) its legislative history—for the proposition that the *Provided* clause, standing alone, can be read as retaining rather than, in effect, eliminating the seasonal exemption of § 7(c) of the Federal Act from overtime pay insofar as a workweek is concerned. But we need not rely on the *Provided* clause of § 5 alone to reach this result. Section 22 of Act No. 379 provides "all the terms" of the Minimum Wage Act and the mandatory decrees promulgated pursuant thereto "shall remain in full force and effect." In interpreting § 22 we have held that, with one exception, it preserves the provisions of all existing decrees, irrespective of whether they contain provisions superior or inferior to those found in Act No. 379. *Caguas Bus Line* v. *Comm'r of Labor*, 73 P.R.R. 690.

Par. B(2)(b) of Mandatory Decree No. 3 provides that:

"No employer shall employ a worker in the industrial phase of the Sugar Industry during the so-called 'dead season,' for more than forty (40) hours in any workweek, unless such worker receives compensation for the hours worked in excess of the said forty (40) hours at a rate one and one-half times the minimum rate applicable in accordance with the scale established in Section B-1 of this decree."

When this decree was approved in February 1943, § 7(c) of the Federal Act, as we have seen, exempted certain employees, like the plaintiff, from the overtime provisions of the Federal Act during the grinding season. It is therefore obvious that, by confining the overtime provision of time and a half after 40 hours a week in Par. B(2)(b) to the dead season, Mandatory Decree No. 3 was in effect "adopting" the Federal seasonal exemption as a matter of local law.[10]   And when § 22 of Act No. 379 preserved all existing decrees, the implied provision of an exemption from overtime pay based on a workweek during the grinding season —as well as the specific provision of time and a half after 40 hours during the dead season—remained in effect under the rule laid down in the *Caguas Bus Line* case, *supra*.

We are aware that the foregoing argument—that the seasonal exemption impliedly found in Decree No. 3 was preserved by § 22 of Act No. 379—would be stronger if the exemption had been specifically rather than impliedly stated in Par. B(2)(b).   Nevertheless, we think that when this reasoning is added to our previous discussion of the intention of the Legislature in enacting the *Provided* clause

[10] Par. B(2)(a) of Mandatory Decree No. 3 provides for double pay after 8 hours a day during the entire year.  This provision also remained in effect—under § 22 of Act No. 379 and the *Caguas Bus* case—after enactment of Act No. 379.  Accordingly, irrespective of the workweek, an employer would be required to pay double time after 8 hours worked on any day during the grinding season.  On the other hand, the fact that this provision was inserted in the decree makes it even clearer that retention of a seasonal exemption in the decree as to a workweek, as provided in § 7(c) of the Federal Act, was deliberate.

of § 5, the conclusion is sound that in enacting Act No. 379 the Legislature did not intend to give employees overtime pay to which they were not entitled under § 7(c) of the Federal Act. The trial court therefore erred to the extent that it awarded overtime pay to the plaintiff at the rate of time and a half for work done after 40 hours a week during the grinding seasons involved herein.

■ The fifth assignment is to the effect that the lower court erred "in holding that appellee's claim for extra hours worked on or before June 19, 1952 has not prescribed under the provisions of § 6 of the Federal Portal-to-Portal Act (29 U.S.C. 255(a))."

In *Eastern Sugar Associates* v. *Peña, supra,* the United States Court of Appeals for the first Circuit stated at p. 938:

". . . The statute of limitations imposed by section 6 of the Portal-to-Portal Act by its terms, however, applies only to suits to enforce causes of action 'under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act.' It does not purport to apply to similar causes of action arising under state law and was not intended to do so, as the legislative history clearly shows."

We must therefore determine on what statute or statutes plaintiff's cause of action is predicated and then apply the proper statute of limitations. The trial court concluded that plaintiff's cause of action rests entirely on local statutes which are more beneficial to him than the federal statutes. It stated as follows:

"Plaintiff's claims are wholly based on laws and legal provisions of Puerto Rico . . . This is true of the compensation claimed for hours worked in excess of 8 hours a day, for hours worked on the weekly day of rest and for the hours worked in excess of 40 hours a week. The fact that the Federal Fair Labor Standards Act also guarantees to the employee the payment of time and a half for the weekly hours worked in excess of 40—a right which is guaranteed by § 5 of Act No. 379 of

1948 of Puerto Rico—did not bar him from availing himself of the local statute, which in effect he did."

As in the *Peña* case, we need not determine here whether the Civil Code or Federal statute of limitations applies to wage claims for which the local and Federal Acts provide exactly the same compensation. Even if the local Act and the Federal Act guaranteed to plaintiff the payment of time and a half for hours worked in excess of 40 hours a week during the dead season, the application of the local statute would still be more beneficial to him where, as here, there is involved a frustrated Belo type contract. This is due to the fact that under the Federal Act the regular rate is computed on the basis of the time actually worked each week by the laborer, while under the local statute the regular rate is computed on the basis of the hours in the regular work-week. On this point, the Court of Appeals for the First Circuit stated as follows at p. 938 in *Eastern Sugar Associates* v. *Peña, supra:*

"This is because the two acts differ as to the manner in which the employee's regular rate is computed for overtime purposes . . . Accordingly in every case in which the plaintiff worked for more than 40 hours for his weekly wage . . . the overtime compensation to which he was entitled under the Puerto Rican act was greater than that provided for by the Federal act, regardless of whether or not he worked on a rest of the local statute, which in effect he did."

As to the hours worked in excess of 8 hours a day or on the rest day, it is obvious that the application of the local Act is likewise more beneficial to the laborer. We therefore conclude that plaintiff's cause of action in the instant case relies in its entirety on laws or legal provisions of Puerto Rico, and, hence, that the prescriptive period of the Portal to Portal Act is not applicable. See *Peña* v. *Eastern*

*Sugar Associates, supra,* at p. 308, as well as *Eastern Sugar v. Peña, supra,* at pp. 936, 937, and 938.[11]

The sixth error assigned is to the effect that "the lower court erred in imposing on appellants, as part of the judgment, the obligation to pay an amount equal to the principal amount due."

This alleged error hardly calls for discussion. It was raised by appellant on another occasion and decided against it. See *Peña v. Eastern Sugar Associates, supra.* This notwithstanding, we repeat here that the provision of § 13 of Act No. 379 of 1948—29 L.P.R.A. § 282—bearing on liquidated damages is mandatory. We expressed the same view with respect to a similar provision contained in § 25 of Act No. 8 of 1941—29 L.P.R.A. § 236—(see, also, *Tulier v. Land Authority,* 70 P.R.R. 249, and *Peña v. Eastern Sugar Associates, supra,* at p. 300).

Lastly, appellant maintains that the lower court "erred in holding that § 1867 of the Civil Code of Puerto Rico, 1930 ed., is valid and constitutional." The pertinent part of this section is copied verbatim in footnote 11.

In the oft-mentioned *Peña* case we stated:

" . . . The claims in this case arose under local laws which are valid because they establish standards of minimum wages and maximum hours not found in the Fair Labor Standards Act. . . .

---

[11] Plaintiff was still working for the defendant on June 9, 1954, when he filed his complaint. Under the provisions of § 1867 of the Civil Code, 1930 ed., his action had not prescribed. 31 L.P.R.A. § 5297. This section provides in its pertinent part:

"Actions for the fulfilment of the following obligations shall prescribe in three years:

" . . . . . . .

"3. For the payment of mechanics, servants, and laborers the amount due for their services and for the supplies or disbursements they may have incurred with regard to the same.

" . . . . . . .

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

"We find nothing in § 6 of the Portal Act or its legislative history indicating that Congress intended for it to apply as a statute of limitations to claims arising under valid State laws.

. . . As the claims here are for rights validly created by local law only, the question of prescription is governed by local law. And under the laws of Puerto Rico the claims in this case have not prescribed . . .

". . . we adhere to our view that wage claims which are founded exclusively on local laws are governed by our local rule as to prescription even where the employee is subject to the Fair Labor Standards Act." See pp. 309, 312.

The gist of appellant's argument is that the reasoning of that section has ceased to exist and that, "if it were interpreted with the limitation with which it was originally adopted in relation to the date as of which the prescriptive period will begin to run, it would be void and unconstitutional as being arbitrary, unreasonable, and whimsical, and as depriving appellants of their property without the due process of law and the equal protection of the laws, classifying them arbitrarily." Defendant's reasonings are directed against the wisdom of the statute rather than its constitutionality. To this we answer with the words employed by this Court in *Muñoz* v. *District Court*, 63 P.R.R. 226, 239, in which a similar question was raised, to wit:

". . . But these considerations, just and reasonable as they are, should be brought before the Legislative Assembly and not before the courts of justice, who are estopped from passing judgment on the soundness and wisdom of a law."

The judgment of the Superior Court will be modified to eliminate the award of overtime pay at time and a half after 40 hours a week during the grinding seasons, and as thus modified, the judgment will be affirmed.[12]

Mr. Justice Sifre did not participate herein.

[12] The defendant has assigned no error—and we find none—with reference to the double pay awarded to plaintiff on days of rest.

Neither do we find that the lower court erred in awarding the laborer double pay for the hours worked in excess of 8 hours a day. See § B-2(*a*) of Mandatory Decree No. 3. *Cf.* Art. II, § 16 of the Constitution of the Commonwealth of Puerto Rico—Vol. 1 L.P.R.A., p. 183.